**UNITED STATES v. ATLANTIC COAST LINE R. CO.**

**Civ. No. 913–J.**

District Court, S. D. Florida,
Jacksonville Division.

Nov. 27, 1946.

Herbert S. Phillips, U. S. Atty., of Tampa, Fla., and Edith House, Asst. U. S. Atty., of Jacksonville, Fla., for plaintiff.

Charles Cook Howell and Howell, McCarthy, Lane & Howell, all of Jacksonville, Fla., for defendant.

James O. Tolbert, Sp. Asst. to Atty. Gen., of Washington, D. C., for Government.

DeVANE, District Judge.

This is a civil action brought under the so-called Hours of Service Law, 45 U.S. C.A. §§ 61–64. The pertinent portion of this law applicable to the facts of this case is the latter portion of Section 62 dealing with the service of train dispatchers, etc., which reads as follows: " * * * Provided; That no operator, train dispatcher, or other employee who by the use of the telegraph or telephone dispatches, reports, transmits, receives, or delivers orders pertaining to or affecting train movements shall be required or permitted to be or remain on duty for a longer period than nine hours in any twenty-four-hour period in all towers, offices, places, and stations continuously operated night and day, nor for a longer period than thirteen hours in all towers, offices, places, and stations operated only during the daytime, except in case of emergency, when the employees named in this proviso may be permitted to be and remain on duty for four additional hours in a twenty-four-hour period on not exceeding three days in any week: * * *."

Defendant operates in Jacksonville, Florida an office designated as the "YN" office, located in the General Offices of the defendant. The employees who work in this office are not subject to the provisions of Section 62 dealing with the service of train dispatchers, etc. An employee of the defendant, one I. Cohen, regularly worked in this office from 5:30 p.m. to 1:30 a.m. This was his regular assignment. He was a telegraph operator assigned to this office.

Defendant also operates a telegraph office where orders pertaining to or affecting the movements of trains engaged in Interstate Commerce, are transmitted, received and delivered. This office is known as a "CN" office and is located in the Defendant's Yard Office in its Moncrief Yard. It is continuously operated night and day. Employees working in this office are subject to the above quoted provisions of Section 62 of the Hours of Service Law.

On March 16, 1945 defendant found it necessary to assign a relief operator to its CN office on the following day to do the trick of a regular employee in this office from 8:00 a.m. to 4:00 p.m. The defendant, therefore, held Cohen out of his regular assignment, scheduled to begin at 5:30 p.m. on March 16, 1945 and ordered him to report for duty at its CN office at 8:00 a.m. on the following morning. After, Cohen had completed this assignment at 4:00 p.m. on the same day, he reported to his regular assignment in the defendant's YN office at 5:30 p.m. where he worked until 1:30 a.m. the following morning. The Government charges that this act of the defendant constituted a violation of the Hours of Service Law and has brought this suit to impose the penalty prescribed by Section 63 of the Act.

The Government's contention is that the co-mingling of duties subject to the Act and those not subject to the Act brings the entire period of service within the orbit of the Statute. If this abstract statement is the law, then there was a violation of the Act in this case.

The Hours of Service Statute has been before the United States Courts on many occasions and much has been written as to the purpose of the Act. Its purpose is

clearly and succinctly stated in Atchison, Topeka & Santa Fe Railway Co. v. United States, 244 U.S. 336, 37 S.Ct. 635, 61 L.Ed. 1175, and Chicago & Alton Railroad Co. v. United States, 247 U.S. 197, 38 S.Ct. 442, 62 L.Ed. 1066. In view of the clear and concise statements in these cases of the purpose of this legislation any elaboration on the subject is unnecessary here.

The question presented by the facts in this case is, does the Act prohibit every co-mingling of duties, even in those cases where safety in the operations of trains is not in any way affected?

A reading of the Hours of Service Law and the cases construing and applying it leads to the inescapable conclusion that the purpose of the statute is to promote safety in operating trains by preventing the excessive mental strain which usually results from remaining too long at an exacting task. Clearly the intent of the Statute is to prevent the dangers which must necessarily arise to employees and to the public from continuing men in a dangerous and hazardous position for a period so long as to render them unfit to give that service which is essential to the protection of themselves and to those entrusted to their care.

To accomplish this purpose Congress made it unlawful for any railroad carrier to require or permit an employee to be or remain on duty in specified dangerous and hazardous positions for a longer period than the hours specified in the Statute, in any 24 hour period. There is no question that the Act prohibits the co-mingling of duties where an employee is permitted or required to assume or resume any employment of a dangerous or hazardous nature for which hours of service are prescribed, where the employee has in the preceding 24 hours worked more than the prescribed number of hours applicable to the dangerous or hazardous positions, even in those cases where the time worked represented the co-mingling of duties between those for which hours of service are prescribed and those for which none are prescribed.

In this case if defendant had required its employee, Cohen, to work his regular trick in the YN office on March 16 and also to have required him to work the extra trick in its CN office, beginning at 8:00 a.m., on March 17, the co-mingling of these duties would have constituted a violation of the Statute. However, defendant took the precaution to hold its employee, Cohen, out of his regular assignment on March 16 so he would be fit on the following day to give service which is essential to the protection of those sought to be protected by the Statute. The Court has been referred to no case where the Hours of Service Law has been held to apply to facts similar to the facts in this case. To hold that the Statute applies to a case such as this would be to give the Statute a meaning clearly not intended by Congress. Such a holding would operate only to penalize an employee without any resulting benefit to the other employees or to the public.

The Court holds that under the facts as stipulated in this case no violation of the Hours of Service Law has been shown. A judgment in accordance with this Memorandum Opinion will be entered for the defendant.